UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

VERNON LEE PUGH                                    CIVIL NO. 06-2689 (PAM/JSM)

      Petitioner,

v.                                                             REPORT AND RECOMMENDATION

STATE OF MINNESOTA,

      Respondent.

This matter is before the undersigned United States Magistrate Judge on Vernon Lee Pugh's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 14].   This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.   For the reasons discussed below, it is recommended that Vernon Lee Pugh's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 14] be **DISMISSED WITH PREJUDICE**.

## I.   PROCEDURAL BACKGROUND

Petitioner, Vernon Lee Pugh, was charged and convicted by a jury in Olmsted County District Court with two counts of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.34, subd. 1(a) and § 609.342, subd. 1(h)(iii).   Petitioner was sentenced on the violation of Minn. Stat. § 609.342, subd. 1(h)(iii), to 180 months in prison, which was a 36-month upward departure from the 144-month presumptive sentence.

1

Petitioner appealed his conviction to the Court of Appeals, arguing that the cumulative evidentiary errors of the state district court deprived him of a fair trial. See State v. Pugh, No. A04-663, 2005 WL 1019023 at *1 (Minn. Ct. App. May 3, 2005). Petitioner submitted that the trial court had abused its discretion in permitting the state's expert to express his opinion that Petitioner's 12-year old step-daughter had been sexually abused, and by admitting Spriegl[1] evidence. Id. Petitioner also challenged the upward-departure sentence by the trial court as invalid. Id. The Minnesota Court of Appeals affirmed the convictions, but remanded for resentencing consistent with Blakely v. Washington, 543 U.S. 296 (2004), and Taylor v. State, 670 N.W.2d 584 (Minn. 2003). Pugh, 2005 WL 1019023 at *5. Both the Petitioner and Respondent asked the Minnesota Supreme Court to review the decision by the Minnesota Court of Appeals. On July 19, 2006, the Minnesota Supreme Court remanded Petitioner's case back to the state district court for re-sentencing. See Docket No. 10.

Petitioner commenced this habeas petition on June 27, 2006 alleging the following errors: that the cumulative evidentiary errors of the state district court deprived him of a fair trial and that the upward-departure in his prison sentence was invalid. See Docket No. 1 On August 1, 2006, this Court issued a Report and Recommendation recommending dismissal without prejudice of the Petition as a "mixed petition," since Petitioner's habeas claim regarding his sentencing had not been exhausted. See Pugh v. Minnesota, No. Civ. 06-2689 (PAM/JSM), 2006 WL 3301929 (D. Minn. Nov 13, 2006). On November 13, 2006, District Judge Paul Magnuson ordered Petitioner to file an amended petition containing only his non-Blakely claims by December 13, 2006.

---

[1]      State v. Spreigl, 272 Minn. 488, 139 N.W.2d 167 (1965).

<u>See</u> November 13, 2006 Order [Docket No. 13].  Petitioner filed an Amended Petition on December 6, 2006 [Docket No. 14].  Given that Petitioner filed a petition that only contained exhausted claims, Judge Magnuson then determined that the Report and Recommendation was moot and remanded Petitioner's remaining habeas claim to this Court.  <u>See</u> December 13, 2006 Order [Docket No.  13].

Petitioner's Amended Petition alleged that he was denied the right to due process because two evidentiary errors by the trial court resulted in the denial of a fair trial.  <u>See</u> Amended Petition, ¶ 9.  First, Petitioner asserted that the trial court erred when it allowed the state, over his objection, to introduce expert testimony opinion on the ultimate issue of whether the alleged victim had been sexually abused.  <u>Id.</u>  Second, Petitioner argued that the trial court erred when it allowed the state, over his objection, to introduce <u>Spreigl</u> evidence of a prior conviction for Fourth Degree Criminal Sexual Conduct from 1987involving an adult female victim.  <u>Id.</u>

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, while Petitioner does not explicitly state whether he is proceeding under 28 U.S.C. § 2254(d)(1) or (2), it is evident from the substance of his Petition and supporting memoranda that he is raising a challenge under § 2254(d)(1).  That is, the facts are not in dispute; rather it is Petitioner's contention that the state court's evidentiary rulings regarding the admissibility of the expert's opinion and Petitioner's prior conviction were contrary to or amounted to an unreasonable application of federal law.

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

> A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

4

> erroneously or incorrectly. Rather, that application must also
> be unreasonable." Id. at 411.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006).  Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances."  May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

By its terms, it is important to remember that § 2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision to 'clearly established Federal law, as determined by the Supreme Court of the United States.'" O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), *overruled on other grounds*.  Thus, even if lower federal court decisions support Petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence."  Id.  Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue."  Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25) ("If no Supreme Court precedent is dispositive of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.' In such circumstances, a federal habeas court then determines whether the state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence.  This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable. To the extent that inferior federal courts have decided factually similar

cases, reference to those decisions is appropriate in assessing the reasonableness <u>vel non</u> of the state court's treatment of the contested issue.").

With these standards of review in mind, this Court now turns to the Amended Petition.

## III.   DISCUSSION

### A.   <u>Expert's Testimony Relating to Victim's Reliability</u>

On the issue of the admission of the expert testimony on the victim's alleged sexual abuse, the Minnesota Court Appeals summarized the facts as follows:[2]

> The state's expert witness, Dr. William Friedrich of the Mayo Clinic Department of Psychiatry and Psychology, did not interview M.B. personally, but he reviewed the videotape of M.B.'s detailed "Cornerhouse-type" interview by a social-services worker and an Olmsted County deputy sheriff. Based on that interview, Dr. Friedrich opined that M.B. had been sexually abused. Dr. Friedrich testified that he has interviewed "possibly thousands" of sexually abused children and has learned a number of features that make a disclosure valid, including when a child describes details and all of the senses of the incident, makes a progression from "small to larger" sexual contacts, is consistent, and is able to correct an interviewer's misstatements of the facts. M.B.'s interview, which was shown to the jury, contained all of these features.

<u>Pugh</u>, 2005 WL 1019023 at *1.

This summary of Dr. Friedrich's testimony is consistent with this Court's review of the trial transcript.   Dr. Friedrich testified that he had an opportunity to review a

---

[2]      In accordance with 28 U.S.C. § 2254(e)(1), the findings of fact made by the Minnesota trial and appellate courts are presumed correct unless rebutted by the Petitioner with clear and convincing evidence.  <u>See</u>, <u>e.g.</u>, <u>Miller-el v. Cockrell</u>, 537 U.S. 322, 354 (2003) (Thomas, J., dissenting) (finding that "Title 28 U.S.C. § 2254(e)(1) requires that a federal habeas court 'presume' the state court's findings of fact 'to be correct' unless petitioner can rebut the presumption "by clear and convincing evidence") (quoting 28 U.S.C. § 2254); <u>Perry v. Kemna</u>, 356 F.3d 880 (8th Cir. 2004) (concluding that under § 2254(e)(1), a state court's findings of fact "are presumed to be correct absent 'clear and convincing evidence' to the contrary" presented by the petitioner).

videotaped statement given by Petitioner's victim in September of 2001. <u>See</u> Trial Transcript ("Tr.") [Docket No. 27] at 495. The prosecution initially attempted to ask Dr. Friedrich, based on his review of the videotape and his experience as a psychologist, whether he had an opinion as to whether the alleged victim had been sexually abused. Tr. 496. Petitioner's counsel objected on foundational grounds, arguing that Dr. Friedrich had no foundation to render such an opinion based solely on his review of a videotaped interview of the victim. <u>Id.</u> The trial court sustained the objection as to foundation.[3] Tr. 498.

The prosecution then asked Dr. Friedrich about his experience, and he stated that he had interviewed thousands of children who had alleged sexual abuse. Tr. 498-99. Dr. Friedrich testified that he used a number of features or characteristics of disclosure that give allegations of abuse by children an indicia of reliability. Tr. 499. These features had been taken by Dr. Friedrich from the interviewing information and research that is in the scientific literature. <u>Id.</u> One of the elements was whether the child described with detail the visual, tactile, smell and taste sensations of the abuse experience. Tr. 499-500. According to Dr. Friedrich, if a child provided specific detail of an experience that the child would not normally be expected to have, given their age, then that would lend more validity to their allegations. Tr. 500. Another factor lending to the validity of a claim, was if the child was able to correct any mistake made by interviewers as to what happened during the period of sexual abuse. <u>Id.</u> Dr. Friedrich also testified that he also looked at whether the child was able to describe the abuse as

---

[3]   This Court notes that during the bench conference on Petitioner's foundation objection there was a discussion by the district court about whether the testimony went to the "ultimate issue" of the case. <u>See</u> <u>Pugh</u>, 2005 WL 1019023 at *1.

a chain of events, with the first cases of abuse being small and gradually increasing in severity.   Tr. 501.   In addition, Dr. Friedrich stated that he looked at the child's background and behavioral issues and whether the child gave consistent statements. Id.   Further, Dr. Friedrich testified that the "Cornerhouse" interviewing method used for the victim's interview was generally very adequate given the victim's age.   Tr. 504. Based on Dr. Friedrich's criteria and his review of the victim's videotaped interview, the following exchange took place:

> Q      So I'll ask you again, based upon your clinical experience and professional knowledge, do you have an opinion as to whether or not [M.B.] was sexually abused?
>
> A      Yes I do.
>
> Q      And what is that opinion?
>
>> MR. WRIGHT:      Objection, your honor.   Same basis.
>>
>> THE COURT:      Overruled.
>
> A      I believe she was sexually abused.
>
> Q      And specifically what do you use to base that opinion?
>
> A      There was some very clear, unique detail that was offered in that interview.   For example, she talked about the defendant ejaculating in a packing blanket that had a specific color.   She talked about  - - she described masturbation in a very appropriate way that was clear.   It wasn't something that she hadn't experienced.   She was clear about being accurate.   She corrected the interviewer on two different occasions about when things occurred and in what order they occurred.   She described an incident that occurred - - allegedly occurred in a car, I believe was near a farmstead, and as she was describing it she was actually moving herself through the experience, which is about as close to reliving a real event as you can get.   She described a very clear chronology that started with excessive kissing or some

8

> kissing and then increasing kissing, and then moving into fondling and intercourse. Those I think are the unique detail, the chronology, the reliving, those would be some of the key features.

Tr. 505-06.

According to Petitioner, because the expert opinion of Dr. Freidrich that the victim had been sexually abused was only based on the videotaped interview of the victim, and therefore vouched for truthfulness of the victim's allegations, it was highly prejudicial and it improperly invaded the province of the jury to make a credibility determination. See Memorandum of Law in Support of Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Amended) ("Petitioner's Mem.") at p. 9 [Docket No. 15]. Relying on several state cases,[4] and one federal case,[5] Petitioner contended that this evidentiary ruling denied him due process because it deprived him of his fundamental right to a fair trial. Id. at pp. 7-11; Amended Petition, p. 3.

In response, Respondent argued that while the Eighth Circuit will not admit expert testimony on the issue of whether child abuse has occurred, citing to Johns, this is of no help to Petitioner as he must show that the state court's determination was contrary to federal law, as determined by the United States Supreme Court, and no such law exists. See Respondent's Mem. at p. 13. According to Respondent,

> "'[F]ederal habeas corpus relief does not lie for errors of state law' [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)

---

[4]    State v. Koskela, 536 N.W.2d 625 (Minn. 1995); State v. Myers, 359 N.W.2d 604 (Minn. 1984); and State v. Saldana, 324 N.W.2d 227 (Minn. 1982).

[5]    United States v. Johns, 15 F.3d 740 (8th Cir. 1994).

> (citations omitted).  Questions regarding the admissibility of evidence are matters of state law and are reviewable in federal habeas proceedings "only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir.1984), cert. denied, 469 U.S. 919 (1984) (citing Wallace v. Lockhart, 701 F.2d 719, 724 (8th Cir.1983), cert. denied, 464 U.S. 934 (1983)). Petitioner simply cannot meet his burden of showing that the admission of the expert's testimony infringed on a specific constitutional protection or that it was "so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infect[ed] the trial." See, e.g., McCafferty, 944 F.2d at 452, 454.

Id. at pp. 12-13.  Further, Respondent contended that Petitioner's ultimate-issue and vouching arguments fail for the following reasons:

> First, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Minn. R. Evid. 704. Second, the testimony to which petitioner objects is not testimony on the ultimate issue. The ultimate issue is whether petitioner sexually assaulted the victim. The objected-to testimony simply stated that the victim had been sexually assaulted and did not offer any opinion about the identity of the perpetrator. Third, Dr. Friedrich did not render an opinion as to whether A.A. was telling the truth; he did not evaluate her statements for truthfulness or falsity. He merely opined that based on his observations of A.A. and his knowledge of the behaviors of sexually abused children, he believed that A.A. had been the victim of abuse.

Id. at p. 12 n. 5.

Respondent is correct that Minnesota and the Eighth Circuit have reached different conclusions regarding the admissibility of expert testimony on the issue of whether a child victim has been abused.  In 1984, the Minnesota Supreme Court held that a case involving the sexual abuse of a child is "one of those 'unusual cases' in which expert testimony concerning credibility of a witness should be received." Myers,

359 N.W.2d at 610.  Since that decision, Minnesota state courts have consistently held that expert testimony on whether a child has been sexually abused is properly admissible.  See State v. Dana, 422 N.W.2d 246, 250-251 (Minn. 1988); State v. Hollander, 590 N.W.2d 341, 349 (Minn. Ct. App. 1999); see also State v. Hanson, No. A03-1020, 2004 WL 1557591 at *5 (Minn. Ct. App. July 13, 2004) ("'The basic consideration in admitting expert testimony under Minn. R. Evid. 702 is whether it will assist the jury in resolving the factual questions presented.").  Minnesota courts admit expert-opinion testimony regarding whether a child has been sexually abused because such testimony does not go to the ultimate issue in the trial.  See Dana, 422 N.W.2d at 250-51; see also State v. Flemino, No. C5-02-617, 2003 WL 21061236 at *8 (Minn. Ct. App. May 13, 2003) ("Here, [the expert] did not render an opinion as to whether [the victim] was telling the truth. Rather, she rendered her expert opinion as to whether [the victim] had been sexually abused. While [the expert's] testimony may have helped the jury to determine whether [the victim's] testimony about being sexually abused was truthful, [the expert] did not evaluate [the victim's] statements for truthfulness or falsity. Likewise, [the expert] did not testify that Flemino himself was guilty of committing the abuse that [the victim] has suffered. In light of our decision in Hollander, 590 N.W.2d at 349, the district court did not err in admitting [the expert's] testimony that [the victim] was sexually abused."); Hollander, 590 N.W.2d at 349 (relying on Dana to conclude that expert testimony regarding whether a child has been sexually abused was properly admitted).").  Consistent with these decisions, the Minnesota Court of Appeals in Petitioner's case found that "Minnesota courts held that an expert may express an

opinion that a child was abused, but may not express an opinion about who committed the abuse." <u>Pugh</u>, 2005 WL 1019023 at *2.

On the other hand, the Eighth Circuit has held that "[a] qualified expert may inform the jury of characteristics of sexually abused children and describe the characteristics exhibited by the alleged victim but may not state an opinion that sexual abuse has in fact occurred." <u>Johns</u>, 15 F.3d at, 743 (citations omitted);[6] <u>see also</u> <u>United States v. Azure</u>, 801 F.2d 336, 340-41 (8th Cir. 1986) (expert opinion on truthfulness of particular child abuse victim invaded province of jury in federal criminal trial).  Indeed, the Eighth Circuit has more recently reiterated that "[i]n child sexual abuse cases, 'a qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits.' An expert, however, cannot express an opinion that sexual abuse has in fact occurred or vouch for the victim." <u>United States v. Eagle</u>, 515 F.3d 794, 800 (8th Cir. 2008) (quoting <u>United States v. Kirkie</u>, 261 F.3d 761, 765-66 (8th Cir. 2001)) (internal citations omitted).

The United States Supreme Court has not spoken on the issue whether the admission of expert testimony that the victim has been sexually abused denies a petitioner of due process.  Thus, Petitioner cannot show that Minnesota's stance on this issue is contrary to federal law as articulated by the Supreme Court.  In addition, as the Respondent pointed out, "[q]uestions relating to the admissibility of evidence are matters of state law and are generally not cognizable in an action for habeas corpus." <u>Wood v. Lockhart</u>, 809 F.2d 457, 459 (8th Cir. 1987) (citing <u>Maggitt v. Wyrick</u>, 533 F.2d

---

[6]     The expert in <u>Johns</u>, described the emotional and psychological traits of abuse victims that often account for behavior such as delay in reporting the abuse or failure to escape.  <u>See</u> <u>Johns</u>, 15 F.3d at 743.

383, 385 (8th Cir.), <u>cert. denied</u>, 429 U.S. 898 (1976)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Accordingly, this Court may only examine this state court's evidentiary ruling in this habeas proceeding to determine whether the asserted error denied due process.  <u>See Bailey v. Lockhart</u>, 46 F.3d 49, 50 (8th Cir. 1995) (per curiam); <u>see also Harris v. Bowersox</u>, 184 F.3d 744, 752 (8th Cir. 1999) ("Because questions concerning the admissibility of evidence are matters of State law, proceedings is limited to determining whether the defendant's constitutional rights have been violated.") (citing <u>Rainer v. Dept. of Corrections</u>, 914 F.2d 1067, 1072 (8th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1099 (1991)).

In order for a habeas petitioner to prove that a state court evidentiary ruling violated his right to due process, "the alleged error [must be] so conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair." <u>Gee v. Groose</u>, 110 F.3d 1346, 1350 (8th Cir. 1997) (citation omitted).

> To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different. In assessing whether this burden has been met, the following are of particular importance: the frequency and pervasiveness of the alleged misconduct in the context of the entire trial; the weight of the evidence supporting guilt; and whether the trial judge gave a cautionary instruction to the jury.

<u>Gee</u>, 110 F.3d at 1350 (citations and marks omitted).

13

Since here expert testimony was admitted in a state court case that the child victim had been sexually abused, the Court must decide whether its admission "is of a constitutional dimension; that is, whether it is so prejudicial as to be fundamentally unfair, thus denying the [Petitioner] a fair trial." Engesser 457 F.3d at 736.   Stated otherwise, this Court must determine whether the verdict would have been different but for the admission of Dr. Friedrich's testimony. See Gee, 110 F.3d at 1350.   To assist this Court in this determination, the Court is guided by several Eighth Circuit cases where the appellate court has considered similar issues in the context of a habeas proceeding.

In Bachman v. Leapley, the Eighth Circuit affirmed the district court's denial of habeas relief to a petitioner convicted in state court of rape and sexual contact where the petitioner challenged the trial court allowance of the government's expert to opine on the believability of two child victims' stories that they had been raped.  953 F.2d 440, 441 (8th Cir. 1992).   In reaching its decision, the court observed that "the witnesses testified that the victims' mental states fell within a normal range, that their behavior was consistent with that of other victims of sexual abuse, that the reported dreams and flash-back memories were consistent with actually experiencing a traumatic event, and that the victims' stories were corroborative of subsequent testimony." Id.   In addition, the court noted that an "explicit jury instruction was given stating that the jury was the sole judge of credibility and that it was not bound to accept the doctors' opinions." Id. at 442. Recognizing that it has "granted some degree of latitude in the admission of expert testimony in rape and sexual abuse cases," the Eighth Circuit concluded that such testimony did not violate any federal constitutional principle. Id.

14

On the other hand, in <u>Maurer v. Dep't of Corr.</u>, 32 F.3d 1286 (8th Cir. 1994), the Eighth Circuit granted habeas relief where a state court allowed testimony by witnesses as to the credibility of an adult rape victim.[7]   After observing that "[w]e, however, do not concern ourselves with state evidentiary errors on habeas," the court stated "[i]n this case, we must decide whether the "vouching" testimony invaded the jury's credibility determination to such an extent that it denied Maurer due process of law." <u>Id.</u> at 1289 (citation omitted).

> To make this determination, we "review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." When the evidence is close, it is more likely that evidentiary error will infect a trial with fundamental unfairness. Also important are the manner in which the complained of evidence was presented, whether the evidence was highly persuasive, whether it was used in closing argument, and whether the defense was able to effectively counter it.

<u>Id.</u> (citations omitted).

The Eighth Circuit then found that the prosecution "was essentially a credibility contest" between the defendant and the victim, where the prosecutor asked each of the four witnesses, to whom victim complained of rape, whether she was sincere in her complaint. <u>Id.</u> at 1290.  In addition, the prosecution emphasized the witnesses' opinions that the victim was sincere a number of times during closing argument. <u>Id.</u>  The Eighth Circuit determined that the admission of the testimony by witnesses as to the credibility of the victim was not harmless because the evidence convicting defendant was close, involved a credibility determination and because the vouching testimony was repeatedly solicited and reemphasized during the closing argument. <u>Id.</u>  Further, the Court found

---

[7]     The Court notes that in <u>Mauer</u> the state conceded that the trial court erred in allowing such "vouching" testimony.  32 F.3d at 1289.

that the vouching testimony was probably crucial to the jury's ultimate determination and infected the proceeding with fundamental unfairness.  Id. at 1290-91.

In a more recent case, Olesen v. Class, 164 F.3d 1096 (8th Cir. 1999), the Eighth Circuit denied habeas relief where an attorney failed to object to court testimony by a psychologist as to the credibility of a child sex abuse victim.  In Olesen, the court stated that the psychologist's opinion as to the victim's credibility was offered on rebuttal after the defense "had introduced a parade of witnesses who attacked [the victim's] credibility, the testimony was quite brief, and [defendant's] trial counsel effectively cross-examined the psychologist.  Id. at 1102.  Eighth Circuit also found it important that the psychologist's testimony concerning child's credibility was not mentioned by either the prosecution or the defense in closing arguments, and that the trial court had instructed the jury that it was the sole judge of the witnesses' credibility.  Id.  Given these facts, the Eighth Circuit concluded that the admission of the testimony of the victim's credibility "did not render the trial and verdict unfair or unreliable. . . ."  Id.

Here, the testimony elicited from Dr. Freidrich regarding whether he believed that the victim had been sexually abused was only solicited once.   Further, while the prosecution stated in its closing argument that the case "was not about physical evidence," but was "about credibility, the credibility of the witnesses" (Tr. 587), the prosecution did not discuss Dr. Friedrich's opinion that the victim had been sexually abused.   Instead, to the extent that the prosecution mentioned the substance of Dr. Friedrich's testimony in the closing, counsel only discussed the factors Dr. Friedrich considered to determine whether allegations of sex abuse were true.  Tr. 588, 591-92. Additionally, Petitioner's attorney had an adequate opportunity to cross-examine Dr.

16

Freidrich.   Tr. 506-12.   Finally, the trial judge instructed the jury that "[i]n regards to evaluation testimony of witnesses, you are the sole judges of whether a witness is to be believed and the weight to be given a witness's testimony."  Tr. 576.

Given the totality of circumstances in this case, this Court finds that Petitioner has failed to demonstrate that the verdict would have been different but for the admission of Dr. Friedrich's testimony.  See Gee, 110 F.3d at 1350.  In particular, the victim testified that she was sexually abused by Petitioner and that she was afraid to tell anyone because he had threatened her life if she said anything.  Tr.  280-306.  The sexual abuse was not discovered until the victim's mother pried into her daughter's locked diary on a suspicion of underage smoking only to find out that Petitioner was having sex with her daughter and that the victim had wanted to stop but that Petitioner had threatened to kill her.  Tr. 381-82.  The contents of the diary were corroborated by the victim's brother who also testified that Petitioner had told him not to tell investigators anything.  Tr. 439-442.  In addition, the victim's mother testified that when he confronted Petitioner about the entry in the diary, he threatened to kill himself and admitted he needed help.  Tr. 386-87.  Based on this record, this Court cannot conclude that the verdict would have been different had Dr. Friedrich not been permitted to testify that plaintiff had been sexually abused.  As such, this Court finds that the testimony of Dr. Friedrich did not violate Petitioner's due process right to a fair trial, and that the state court's decision did not amount to an unreasonable application of federal law.

## B.   Trial Court's Admission of Spreigl Evidence

The state moved to admit evidence of Petitioner's 1987 conviction of Fourth-Degree Criminal Sexual Conduct against an adult female.  The trial court allowed the

state to use the prior crime to the extent that Petitioner threatened a woman with anal intercourse if she did not comply with his demands for vaginal intercourse.  Tr. 261. The trial court concluded that this evidence was relevant to <u>modus</u> <u>operandi</u>, in that it was a consistent reaction to a victim's refusal to have sex with the Petitioner, as the child victim in the instant case had also alleged that Petitioner threatened her with anal sex if she would not submit to having vaginal sex with him.  Tr. 261-62.  The trial court refused to allow any testimony from the 1987 victim related to torture involving a telephone cord.  Tr. 261.

The 1987 victim testified at the trial that she when refused to have sex with Petitioner, he threatened her by stating, "[i]f you don't shut up I'll turn you over and fuck you in the ass."  Tr. 488.  The child victim in the present matter later testified that when she complained to Petitioner that the vaginal intercourse hurt her, he stated that if she was not quiet he would "put it in [her] butt."  Tr. 297.  The trial judge cautioned the jury prior to the testimony of the 1987 victim and during his final instructions to the jury that this testimony was admitted for the limited purpose of assisting the jury in determining whether Petitioner committed the acts alleged against him as to the child victim and that the jury was not to convict Petitioner based on what occurred to the 1987 victim.  Tr. 486, 578.  Upon cross-examination, the 1987 victim stated she was aware that Petitioner had been charged with a crime as a result of the 1987 incident, and that he had pled guilty to a lesser charge.  Tr. 489.

The Minnesota Court of Appeals concluded that the district court did not abuse its discretion by admitting the prior act evidence, as it restricted the evidence to the fact of the conviction and the nature of the threat by the Petitioner and gave the required

cautionary and limiting instructions when the evidence was admitted and during final instructions.  See Pugh, 2005 WL 1019023 at *4.

Petitioner claimed that this Spreigl[8] evidence should not have been admitted into the trial court proceeding against him on grounds that it denied him a fair trial.  See Amended Petition, ¶ 9.  Petitioner objected to the use of the conviction as the evidence was not relevant, was not sufficiently similar to the charged offense and any probative value was outweighed by the unfair prejudice it caused, as it allowed the jury to infer his propensity to engage in sexual crimes.  See Petitioner's Mem. at pp. 14-21.  Petitioner also asserted that the prior crime was too remote in time to be relevant to the instant case.  This Court rejects Petitioner's arguments for several reasons.

First, as stated previously, it is not the province of this court to reexamine state-court determinations on state-law questions but to only examine a state court's evidentiary ruling in a habeas proceeding to determine whether the asserted error denied due process.  See Estelle, 502 U.S. at 67-68; Bailey, 46 F.3d at 50; Harris, 184 F.3d at 752 ("Because questions concerning the admissibility of evidence are matters of State law, proceedings is limited to determining whether the defendant's constitutional rights have been violated.") (citation omitted).  As such, it is not within the purview of this Court to decide whether the state court violated state law by not determining whether Petitioner would have suffered undue prejudice from the admission of the

---

[8]     This evidence was admitted pursuant to State v. Spreigl, 272 Minn. 488, 139 N.W.2d 167, 172-73 (1965).   Under Minnesota law, "[e]vidence of past crimes, frequently referred to as Spreigl evidence . . . can be admitted to show motive, intent, absence of mistake, identity, or a common scheme or plan." State v. Gomez, 721 N.W.2d 871, 877 (Minn. 2006) (citing Minn. R. Evid. 404(b); Spreigl, 139 N.W.2d at 167).

Spreigl evidence because it did not determine if the case was otherwise "weak" before allowing the evidence to be admitted.  See Petitioner's Mem. at p. 19.

Second, an analogous federal rule to the admission of Spreigl evidence under Minnesota law, Federal Rule of Evidence 404(b),[9] has been found to be "a rule of inclusion, permitting admission of other crimes evidence unless it tends to prove only the defendant's criminal disposition."  United States v. O'Connell, 841 F.2d 1408, 1422 (8th Cir. 1988), cert. denied, 487 U.S. 1210 (1988), 488 U.S. 1011 (1989)); see also Jackson v. Dingle, No. Civ. 04-19 (DSD/SRN), 2005 WL 1270594 at *10 (D. Minn. May 25, 2005).  Consistent with Rule 404(b), the evidence in this case was not introduced to show defendant's criminal disposition, but rather to show the Petitioner's modus operandi for the purpose of bolstering the credibility of the victim's allegations regarding his sexual abuse.

Third, Petitioner's argument that the sexual acts at issue were not similar has no merit considering both cases involved Petitioner threatening another with anal intercourse if they did not acquiesce to his forcible vaginal intercourse.

As to whether probative value of the evidence outweighed its prejudice to defendant, this Court notes that all past crime evidence is "inherently prejudicial", but the test "is whether its probative value is *substantially* outweighed by the danger of

---

[9]     Rule 404(b) allows a district court to admit "[e]vidence of other crimes, wrongs or acts" for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident;" but not for the purpose of proving the character of the defendant to show that he acted in conformity with that character. Fed. R. Evid. 404(b).   To be admissible as Rule 404(b) evidence, the evidence must be "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995) (citing United States v. Jones, 990 F.2d 1047, 1050 (8th Cir. 1993)).

*unfair* prejudice." United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006) (emphasis in original) (citing Fed. R. Evd. 403, 404(b)). Here, the past crime evidence is necessary considering the lack of physical evidence of sexual abuse. See Jackson, 2005 WL 1270594 at *10 (finding that past crime evidence was necessary given the lack of direct evidence). Further, the district court restricted the Spreigl evidence to the fact of the conviction and the nature of the threat and gave the cautionary and limiting instructions when the evidence was admitted and during final instructions. In particular, the trial judge cautioned the jury prior to the testimony of the 1987 victim and during his final instructions to the jury that this testimony was admitted for the limited purpose of assisting the jury in determining whether Petitioner committed the acts alleged against him as to the child victim and that the jury was not to convict Petitioner based on what occurred to the 1987 victim. Tr. 486, 578. This Court finds that probative value of past crime evidence showing modus operandi was not substantially outweighed by the danger of unfair prejudice considering the limiting instruction. See United States v. Cole, 537 F.3d 923 (8th Cir. 2008) (finding that the trial court did not abuse its discretion by admitting prior act evidence to show intent given the limiting jury instruction).

Finally, "[w]hether the evidence is close in time is one factor indicating the relevancy of the evidence, but 'there is no specific number of years beyond which prior bad acts are no longer relevant. . . .'" United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995) (quoting United States v. Burkett, 821 F.2d 1306, 1309-10 (8th Cir. 1987)). Indeed, courts have approved the admission of other crimes evidence for acts committed up to 18 years before the crime charged. United States v. Arnold, 467 F.3d 880, 885 (5th Cir. 2006) ("We have upheld the admission of Rule 404(b) evidence

where the time period in between was as long as 15 and 18 years."), cert. denied, ---

U.S. ----, 127 S.Ct. 2445, (2007); see also United States v. Engleman, 648 F.2d 473,

479 (8th Cir. 1981) (upholding the admission of Rule 404(b) evidence that was 13 years

old).   To ascertain whether a prior crime is remote, courts are to apply a

reasonableness standard, which examines the facts and circumstances of each case.

See Shoffner, 71 F.3d at 1432-33.   In this case, this Court finds that conduct of

Petitioner's prior crime in 1987 was not unreasonably remote to the crime charged that

is the subject of the present Petition, given that both cases involved Petitioner sexually

assaulting a female and telling them that he would penetrate them anally if they did not

stop complaining about vaginal intercourse.

For all of the reasons stated above, this Court cannot find that the admission of

the Spreigl evidence by the state trial court was involved an unreasonable application of

clearly established federal law.

### C.   Conclusion

In sum, this Court concludes that each of the alleged evidentiary errors alone, or

in combination, did not deprive Petitioner of his right to a fair trial.   As such, Petitioner's

application for writ of habeas corpus should be dismissed.

## IV.   RECOMMENDATION

For the reasons set forth above and based on all the files, records, and

proceedings herein, IT IS RECOMMENDED that Vernon Lee Pugh's Amended Petition

under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody

[Docket No. 14] be **DISMISSED WITH PREJUDICE**.

Pugh R&R doc

Dated:      October 15, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 1, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rules shall be limited to 3500 words.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.